UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 18-116-DLB-CJS

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY                                                PLAINTIFF

v.                    **MEMORANDUM OPINION AND ORDER**

JALONTAI WILSON, DOUGLAS
CONWAY, and DALTON CONWAY                                         DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff American National Property and Casualty Company (ANPCC) brought this declaratory-judgment action to adjudicate its obligations under an insurance contract. (Doc. # 1). ANPCC's suit arises from an underlying tort action brought in Kentucky state court by Defendant Jalontai Wilson against ANPCC's insureds, Dalton and Douglas Conway, following an automobile accident between Dalton Conway and Jalontai Wilson. *Id.* ANPCC alleges certain facts that, if true, would—according to ANPCC—invoke an exclusion in the Conways' automobile insurance policy and free ANPCC from its contractual obligations. *Id.*

This matter is now before the Court on Defendant Jalontai Wilson's Motion to Dismiss for Lack of Subject Matter Jurisdiction. (Doc. # 10). Wilson argues that the Court should exercise its discretion to decline jurisdiction over this declaratory-judgment action in the interest of fairness, judicial efficiency, and federalism. *Id.* ANPCC having filed its Response (Doc. # 13) and the time for further briefing having expired under the

Local Civil Rules, the matter is now ripe for review. L.R. 7.1(c). For the reasons set forth herein, Defendant Wilson's Motion to Dismiss is **granted**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff-insurer ANPCC has named its insureds, Dalton and Douglas Conway, as well as claimant Jalontai Wilson, as Defendants in this declaratory-judgment action. *See* (Doc. # 1). Defendant Wilson is the Plaintiff in the underlying state-court action filed in Kenton County Circuit Court on June 7, 2018.[1] (Doc. # 10-2). Wilson's suit named Dalton Conway, Douglas Conway, and ANPCC. *Id.* Therefore, the same parties involved in the instant declaratory-judgment action are parties to the underlying state-court suit. *See id.*

Wilson's state-court Complaint alleges that on September 5, 2017, he was a passenger in Dalton Conway's vehicle, and was injured while exiting the vehicle due to Mr. Conway's operation of the vehicle. *Id.* As to Dalton Conway, Wilson brought a negligence claim (Count One) and a negligence-*per-se* claim based upon Kentucky's reckless-driving statute, Ky. Rev. Stat. § 189.290 (Count Two). *Id.* Wilson also alleges assault and battery claims against Dalton Conway (Counts Four and Five) as well as a remedy-for-criminal-acts claim under Ky. Rev. Stat. § 446.070 (Count Six) and a gross-negligence claim (Count Seven). *Id.* at 4-5. As to the owner of the vehicle, Douglas Conway, Wilson brought a negligent-entrustment claim (Count Three). *Id.* at 3. Finally, as to ANPCC, the Conways' motor-vehicle insurer, Wilson brought a claim for reparation benefits under Ky. Rev. Stat. § 304.39-050 (Count Eight). *Id.* at 7.

---

[1] The case is docketed as *Wilson v. Conway et al.*, 18-CI-1059.

2

ANPCC initiated this declaratory-judgment action on July 11, 2018—approximately thirty-four days after Jalontai Wilson filed his state-court complaint.[2]  (Doc. # 1).  In its federal complaint, ANPCC summarized the allegations in Wilson's state-court Complaint, *see* (Doc. # 1 at 2-3), and added an allegation that the motor-vehicle accident arose out of Dalton Conway's intentional acts and criminal conduct.  *Id.* at 3.  Specifically, ANPCC's Complaint alleges that on the day of the subject accident, Dalton Conway was selling marijuana to Jalontai Wilson and an unknown individual when Wilson and the unknown individual attempted to rob him.  *Id.*  ANPCC further alleges that during the attempted robbery, Conway attempted to flee to avoid being shot.  *Id.* at 3.  In the process of fleeing, Conway allegedly struck Wilson with the door of the insured vehicle, causing significant injuries.  *Id.* at 2-3.

ANPCC's Complaint alleges that the insurer is entitled to a declaratory judgment confirming that there is no coverage under the circumstances because Wilson's injuries occurred as the result of an "intentional act" by Dalton Conway "while participating in or preparing to commit a criminal act," triggering several exclusions under the policy.  *Id.* at 3-4.  Further, ANPCC seeks a declaration not only that it "has no liability" under the policy, but that it also "has no duty or obligation to defend Douglas Conway and/or Dalton Conway" against Wilson's state-court tort claims.[3]  (Doc. # 1 at 5-6).

---

[2]  ANPCC's independent basis for federal jurisdiction over this declaratory-judgment action is based upon diversity of citizenship pursuant to 28 U.S.C. §§ 1332.  *See* (Doc. # 1 at 2); *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007) (explaining that 28 U.S.C. § 2201 of the Declaratory Judgment Act does not provide an independent basis for federal subject matter jurisdiction and therefore "a federal court must have jurisdiction [independently] . . . under some other federal statute").

[3]  ANPCC advised that it is defending the Conway Defendants under a reservation of rights in the underlying state-court litigation.  (Doc. # 13 at 3).

In its motion to dismiss (Doc. # 10), Wilson argues that the Court should decline jurisdiction over this action in the interest of fairness, judicial efficiency, and federalism. *Id.* Because this case presents the same parties and similar issues of fact as those involved in the underlying state-court litigation, Wilson argues that litigation of the insurance issue before this Court would be inefficient, unfair, and result in potentially overlapping factfinding. *See id.* ANPCC filed a Response on September 20, 2018. (Doc. # 13). The time for further briefing having expired, *see* L. R. 7.1(c), the matter is now ripe.

## II. ANALYSIS

### A. Standard of Review

The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); 28 U.S.C. § 2201 (providing that courts "may," not *must*, "declare the rights and other legal relations of any interested party seeking such declaration"). Thus, the U.S. Supreme Court has held that "[a]lthough the District Court ha[s] jurisdiction of the suit under the Federal Declaratory Judgments Act, it [i]s under no compulsion to exercise that discretion." *United States Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 564 (6th Cir. 2006) [*Albex*] (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942)). Moreover, unlike the high threshold required to invoke *Colorado River* abstention, courts need not "point to 'exceptional circumstances' in declining to exercise jurisdiction in a declaratory judgment suit." *Id.* (citing *Wilton*, 515 U.S. at 286; *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818-20 (1976)).

"[A] district court's discretion is not unfettered, however." *Albex*, 161 F. App'x at 564. The Sixth Circuit has identified five factors that a district court must consider in deciding whether or not to exercise jurisdiction over a request for a declaratory judgment. *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984). Subsequently refined to add three additional subfactors, the present formulation of the *Grand Trunk* test requires the district court to analyze the following factors:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]

    a. whether the underlying factual issues are important to an informed resolution of the case;

    b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

    c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and

(5) whether there is an alternative remedy which is better or more effective.

*Mass. Bay Ins. Co. v. Christian Funeral Dirs.*, No. 18-5267, 2018 WL 6787945, at *3 (6th Cir. 2018) (internal citations omitted).

The factors are not necessarily "equal" in importance; rather, the "relative weight" of each factor depends heavily on the "underlying considerations of efficiency, fairness, and federalism," which will vary depending on the circumstances of each case. *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). Accordingly, courts enjoy broad discretion to decline jurisdiction "after a reasoned analysis of the five-factor test." *Albex*, 161 F. App'x at 564 (noting that the Sixth Circuit has "consistently upheld decisions of the district courts declining jurisdiction in declaratory judgment cases after a reasoned analysis of the five-factor test."); *cf. AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004) (finding reversible error when a district court fails to "apply each factor.").

### B. The *Grand Trunk* factors weigh in favor of dismissal.

The U.S. Supreme Court has long held that declaratory-judgment actions provide a permissible way to resolve insurance-coverage disputes, including instances where an insurer has sued the injured person who is attempting to obtain a judgment against the insured tortfeasor. *See Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937). However, upon weighing the five *Grand Trunk* factors, federal district courts frequently decline to exercise jurisdiction when, as is the case in the instant proceedings, underlying state-court proceedings between an injured party and the insured tortfeasor undermine the considerations of efficiency, fairness, and federalism.

#### *i. This action would not settle the ultimate controversy.*

The first *Grand Trunk* factor examines whether the declaratory-judgment action would settle the controversy. *Mass. Bay Ins. Co.*, 2018 WL 6787945, at *3. There is a split of authority within the Sixth Circuit regarding this first factor. *Mass. Bay Ins. Co.*,

6

2018 WL 6787945, at *3 (citing *Flowers*, 513 F.3d at 555). One line of cases weighs the first factor against exercising federal jurisdiction when the declaratory action would not settle the ultimate controversy between the parties, which is ongoing in state court. *Travelers Indem. Co. v. Bowling Green Prof'l Assoc.*, 495 F.3d 266, 272 (6th Cir. 2007); *Bituminous Cas. Corp. v. J&L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004). The opposing line of cases weighs the first factor in favor of exercising federal jurisdiction even when the declaratory action would not resolve the underlying state-court action. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448 (6th Cir. 2003); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987). The Sixth Circuit has implied that the inconsistency between these two lines of cases can be reconciled by considering their factual differences. Primarily, the key factual differences concern whether or not the same parties are involved in the underlying state-court action, and whether coverage turns on either a straightforward legal question or a factual question that is involved in the state-court litigation.

In *Bituminous*, the insurer sought a declaration that it was not required to defend the insured employer in a state-court action based on a logging accident which injured one of the insured's employees. *Bituminous*, 373 F.3d at 808. In finding that the first factor weighed against exercising federal jurisdiction, the Sixth Circuit focused on the fact that coverage hinged upon a fact-based question of state law regarding whether the plaintiff in the state action was an "employee" of the insured. *Id.* at 813. Importantly, the factual question of the state-court plaintiff's employment status with the insured was already being considered in state-court proceedings. *Id.* Also relevant, the state-court plaintiff was not made a party to the declaratory-judgment action and thus "any judgment

7

in the federal court action would not be binding as to him and could not be res judicata in the tort action." *Id.* at 814. Considering those facts, the Sixth Circuit found that "a declaration of insurance coverage would not resolve the controversy." *Id.*

In *Northland*, the opposite was true. The *Northland* insurer sought a declaration of no duty to defend the insured title company against a title insurance underwriter's state-court claims for embezzlement. *Northland*, 327 F.3d at 449. In determining that a declaratory judgment would resolve the insurance-coverage controversy—and therefore that the first factor weighed in favor of exercising federal jurisdiction—the Sixth Circuit noted that the insurer "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id.* at 454.

Similarly, the Sixth Circuit found that the first factor weighed in favor of exercising federal jurisdiction in *Flowers*, 513 F.3d at 550-51, 556. First, the Sixth Circuit reasoned that the declaratory-judgment action would settle the controversy because the insurer was not a party to the state-court action. *Id.* Additionally, the *Flowers* Court found it significant that the issue involved only a legal, not factual, dispute about whether the insured therapist's affair with a patient was outside the scope of his employment. *Id.* Finally, the first factor weighed in favor of exercising federal jurisdiction because resolution of the question of law that centered around the coverage issue did not require the district court to inquire into matters addressed or developed in state court. *Id.*

Here, some facts resemble the *Bituminous* line of cases, and some the *Northland-Flowers* line; however, on balance, this factor weighs slightly in favor of dismissal. Unlike *Bituminous*, here the insurer named the state-court plaintiff, Jalontai Wilson, as a party to

this declaratory-judgment action and seeks a declaratory judgment that Wilson is not entitled to reparation benefits under the policy. (Doc. # 1 at 6). Naming Wilson in this action vitiates the concern voiced in *Bituminous* that "any judgment in the federal court action would not be binding as to [the state-court plaintiff] and could not be res judicata in the tort action." *See Bituminous*, 373 F.3d at 814. Nevertheless, unlike the insurers in *Northland* and *Flowers*, the insurer in this case was named in Wilson's state-court Complaint where Wilson seeks reparation benefits under the policy. (Doc. # 10-2 at 7-8).

More significantly, like the coverage question in *Bituminous*, which revolved around a factual determination of the state-court plaintiff's status as an "employee" of the insured, here the coverage question involves fact determinations that echo the state-court claims. *Bituminous*, 373 F.3d at 813. Specifically, Wilson's state-court action, in addition to negligence claims, asserts that the insured engaged in willful acts resulting in assault and battery. (Doc. # 10-2 at 4-5). In the instant case, the insurer argues, *inter alia*, that there is no coverage due to a policy exclusion "for bodily injury or property damage caused intentionally by or at the direction of any insured person." (Doc. # 1 at 4). Thus, the question in the instant case of whether the insured, Dalton Conway, acted willfully and thereby triggered a policy exclusion is much more like the factual determination in *Bituminous*—where the court was required to find whether or not the state-court plaintiff qualified as an "employee" under the policy—than the legal determination in *Flowers*, where the court was required to analyze whether a therapist acted outside the scope of his employment by engaging in an affair with a patient. *Bituminous*, 373 F.3d at 813; *Flowers*, 513 F.3d at 550-51, 556.

In sum, the first factor—whether the declaratory judgment action will settle the controversy—on balance, weighs slightly in favor of dismissal. Although the same parties are involved in the underlying state-court action, the Court finds it determinative that coverage turns in part on a factual question that is involved in the state-court litigation. Therefore, this factor weighs against exercising jurisdiction. *Bituminous*, 373 F.3d at 814.

> ***ii. Under the circumstances, the action would not serve a useful purpose in clarifying the ultimate legal relations in issue***.

The second *Grand Trunk* factor examines whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue. *Mass. Bay Ins. Co.*, 2018 WL 6787945, at *5. "[A]s with the jurisprudence concerning the first factor, a split has developed in [Sixth Circuit] precedent concerning whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Flowers*, 513 F.3d at 557. For the same reasoning expressed in *Bituminous*, in this case the second factor also weighs against exercising jurisdiction. *Bituminous*, 373 F.3d at 814. Here, "although a declaratory judgment in a situation such as the one in this case would clarify the legal relationship between the insurer and the insured, it would do nothing to clarify the relationship between the parties in the underlying state court action." *Albex*, 161 F. App'x at 565 (citing *Bituminous*, 373 F.3d at 814) (internal quotations omitted). While this is not *per se* determinative, the limited scope of declaratory relief is significant under the circumstances because it could create confusion about the resolution of the legal issues in the underlying state litigation. Accordingly, this factor weighs against exercising jurisdiction.

### iii. *There is no evidence that that the insurer had any improper motive or engaged in any unfair tactics*.

The third *Grand Trunk* factor examines whether "the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for res judicata.'" *Mass. Bay Ins. Co.*, 2018 WL 6787945, at *6 (citations omitted). Primarily, "[t]he third factor is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so with an improper motive, for the purpose of acquiring a favorable forum." *Flowers*, 513 F.3d at 558 (citations omitted). Generally this factor does not weigh in favor of dismissal when the declaratory-judgment action is filed *after* the state-court litigation has commenced.

Here, the declaratory-judgment action was filed on July 11, 2018—approximately thirty-four days *after* Jalontai Wilson brought his state-court claim. (Doc. # 1). There is no evidence on the record that the insurer had any improper motive or engaged in any unfair tactics and the Court will not impute any. *See Flowers*, 513 F.3d at 558 ("We are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record."). Accordingly, this factor weighs in favor of exercising jurisdiction.

### iv. *Use of a declaratory action would raise concerns of federalism.*

The fourth *Grand Trunk* factor examines "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction." *Mass. Bay Ins. Co.*, 2018 WL 6787945, at *6. This is determined by examining three subfactors: (1) "whether the underlying factual issues are important to an informed resolution of the case;" (2) "whether the state trial court is in a better position to evaluate those factual issues than is the federal court;" and (3) "whether there

11

is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Id.* The Court will address each specific subfactor in turn.

### 1. *The underlying factual issues are important to an informed resolution of the case.*

This subfactor examines whether the state court's resolution of the factual issues in this case is necessary for the district court's resolution of the declaratory-judgment action. Often in insurance-coverage cases, it may be possible to resolve an issue regarding the scope of insurance coverage without making factual findings. *See Flowers*, 513 F.3d at 550-51, 556 (finding jurisdiction proper where coverage issue hinged upon a legal, not factual, dispute). Here, however, the coverage determination involves policy exclusions requiring determinations of fact that are involved in the underlying state-court tort claims. As set forth *supra*, Wilson's state-court action, in addition to negligence claims, asserts that the insured engaged in willful acts resulting in assault and battery. (Doc. # 10-2 at 4-5). In the instant case, the insurer argues, *inter alia*, that there is no coverage due to a policy exclusion "for bodily injury or property damage caused intentionally by or at the direction of any insured person." (Doc. # 1 at 4). Thus, determination of the coverage issue in this case exposes the Court to a possibility of conflicting factual findings with the Kentucky trial court, and therefore weighs against exercising jurisdiction because it raises concerns of federalism. *Mass. Bay Ins. Co.*, 2018 WL 6787945, at *6 ("Thus, it appears that this case is dependent on factual findings by the state court, which weighs against exercising jurisdiction."). Thus, because factual findings by the Kentucky court could be in conflict and duplicative with those in state court, this subfactor "strongly suggests the [Court] should decline jurisdiction." *Id.*

### 2. The state trial court is in a better position to evaluate those factual issues than is the federal court.

It is well-established that state courts are generally better situated to resolve disputes over state-regulated insurance contracts unless the insurance company is not a party to the state-court action or the insurer's contractual obligations are not at issue in the state-court proceedings. *See, e.g., Mass. Bay Ins. Co.*, 2018 WL 6787945, at *6-7 ("In general, states are in a better position to resolve insurance issues governed by state law."); *Albex*, 161 F. App'x at 566 (finding that the state court was in a better position to address state-law questions "in a field which is largely reserved to the states and thus implicates public policy considerations that form the foundation of state regulation of insurance and the state courts' development of . . . common law.") *See also Flowers*, 513 F.3d at 560; *Travelers*, 495 F.3d at 273.

Here, the Kentucky court is better situated to resolve this dispute over the state-regulated insurance contract at issue—particularly because the insurer is a party to the state-court action and the state-court plaintiff has asserted a claim for reparations benefits under the policy, so the insurer's contractual obligations are directly at issue in the state-court proceedings. (Doc. # 10-2 at 6-7). *See also Mass. Bay Ins. Co.*, 2018 WL 6787945, at *7 (finding that the district court did not abuse its discretion in finding that this factor weighed strongly against exercising jurisdiction when some of the issues likely to arise in state court would have an impact on the district court's coverage determination). Although the mere existence of a state-court proceeding is not determinative, it will heavily influence the analysis. Where another suit involving the same parties and presenting opportunity for adjudication of the same state-law issues is pending in state court, a district court might be indulging in "gratuitous interference" if it permitted the

federal declaratory action to proceed. *Flowers*, 513 F.3d at 559-60. Thus, this subfactor weighs in favor of declining jurisdiction.

### 3. The underlying factual issues have a close nexus with the law and public policy of Kentucky and do not implicate federal common or statutory law.

This subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. The Sixth Circuit has "often recognize[d] that state courts are better positioned to resolve insurance disputes because they are more familiar with the governing laws, and those laws are enacted to protect the citizens of the state." *See Mass. Bay Ins. Co.*, 2018 WL 6787945, at *7 (citing *Flowers*, 513 F.3d at 560; *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 815).

The coverage issue in this federal action implicates important state policies and is more appropriately considered in state court. The underlying tort action has been ongoing in state court since June 7, 2018. (Doc. # 10-2). "[T]he issues that are likely to arise in state court will have an impact on the determination of coverage." *Mass. Bay Ins. Co.*, 2018 WL 6787945, at *7. This is particularly true where, as set forth, *supra*, Wilson's state-court Complaint seeks reparation benefits under the ANPCC policy. Moreover, the coverage question implicates state public policy, while "no federal laws are at issue" in this case—therefore "strongly suggest[ing] the [Court] should decline jurisdiction." *Id.*

### v. There is an alternative remedy which is better or more effective.

The fifth and final *Grand Trunk* factor examines "whether there is an alternative remedy which is better or more effective." *Mass. Bay Ins. Co.*, 2018 WL 6787945, at *7. Put simply, if an alternative remedy is better or more effective, the federal court should

deny declaratory relief. Typically, courts have determined that seeking a declaratory judgment in state court, where the underlying tort action was litigated, is a better, more effective alternative, particularly when the state court can "combine the two actions so that all issues could be resolved by the same judge." *See id.*

Where, as here, "[t]here is no reason to suppose that the alternate remedies available in state court would not adequately protect [the insurer's] interests," this factor weighs in favor of dismissal. *Mass. Bay Ins. Co.*, 2018 WL 6787945, at *8. ANPCC's Response brief focuses mainly on an efficiency argument in asserting that a federal declaratory-judgment action is warranted under the circumstances. The insurer's position that federal adjudication of coverage would be more "efficient" boils down to an attempt to make the litigation less costly for the insurer by avoiding state-court discovery and coming to a coverage determination more quickly. (Doc. # 13 at 2-3). This self-serving argument fails to show, however, that the Kentucky court lacks alternative remedies which are better or more effective than the instant action. ANPCC failed to show why it would be unable to pursue alternative remedies in state court such as filing a counter-claim in the underlying state-court action, raising coverage as an affirmative defense to Wilson's reparations claim, seeking a declaratory judgment in a separate Kentucky state court action pursuant to Ky. Rev. Stat. § 418.040, or filing an indemnity action, in federal or state court, after the conclusion of the state-court litigation. Further, the insurer fails to explain why the state court is not capable of bifurcating the coverage issue from liability or otherwise ordering discovery in an efficient manner. Thus, ANPCC has made no showing that the Kentucky court is "unable or unwilling to resolve this state law contract and insurance coverage issue in a timely, competent, fair and comprehensive fashion"

and therefore "[j]udicial economy and comity alike militate against" exercising federal jurisdiction. *Albex*, 161 F. App'x at 566.

On balance, after making a reasoned analysis of whether issuing a declaration would be useful and fair, the Court finds that the *Grand Trunk* factors weigh in favor of declining to exercise jurisdiction and dismissing the insurer's declaratory-judgment action because the benefits of taking jurisdiction outweigh the costs. *Hoey*, 773 F.3d at 759; *Mass. Bay Ins. Co.*, 2018 WL 6787945, at *8. ANPCC has simply failed to demonstrate that accepting federal jurisdiction over this matter would promote efficiency, fairness, or federalism. The involvement of issues of fact with underlying state-court claims in particular raises concern that exercising jurisdiction would constitute "gratuitous interference with the orderly and comprehensive disposition" of the underlying state-court litigation and might "increase the friction between our federal and state courts." *Id.* (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) (internal citations omitted)). Accordingly, the Court exercises its discretion to decline jurisdiction and dismissing this declaratory-judgment action.

## III. CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that Defendant Jalontai Wilson's Motion to Dismiss (Doc. # 10) is **GRANTED**, and this matter is **STRICKEN** from the Court's active docket.

This 26th day of April, 2019.



Signed By:
*David L. Bunning*  DB
United States District Judge